KONENKAMP, Justice
(concurring in result).
[¶ 19.] Although the Court holds unenforceable only a portion of the felony deferred prosecution agreement here, there is also a jurisdictional defect. As part of this agreement, the factual basis for the *60 felony of grand theft was offered and accepted in magistrate court. It is doubtful whether a magistrate judge has jurisdiction to accept or approve felony plea agreements of any sort. With felonies, magistrate judges are limited to setting bail, assigning counsel, advising rights, holding preliminary hearings, and, in certain instances, taking “not guilty pleas,” but then only when directed to do so by the presiding judge. SDCL 23A-6-29.1; SDCL 23A-4-3. If magistrates cannot accept a felony guilty plea, how can they accept or approve a factual basis for a felony guilty plea as part of a deferred prosecution agreement?
[¶ 20.] More than anything, however, today’s case illustrates the void in our law governing deferred prosecutions. While we know they exist — this was but one instance — deferred prosecution agreements in South Dakota have no standards, no guidelines for eligibility, and no formalized procedures authorized by legislation. They operate informally and purely at prosecutorial discretion. Nonetheless, when these agreements are legally sanctioned and properly managed, other jurisdictions have found them to be of considerable merit.[6]
[¶21.] Not to be confused with deferred prosecution, South Dakota presently has several other complementary programs. One is the 24/7 Sobriety Program overseen by the Attorney General. SDCL ch. 1-11. Participation may be a condition of bond or pretrial release or a sentence. SDCL 1-11-20. Another is the Adult Probationary Drug Court Program. SDCL 16-12B-14.1. These programs have a distinctive difference from deferred prosecution: the locus of control over the case process. Deferred prosecution programs tend to be prosecution based, whereas Drug Courts and the 24/7 Sobriety Program are court-centered.[7] Our recently enacted Public Safety Improvement Act, 2013 S.D. Sess. Laws ch. 101, addresses mostly post-conviction reforms.
[¶ 22.] Deferred prosecution programs help reduce criminal caseloads and incarceration rates and “assist the courts, prosecutors, and victims in addressing serious problems caused by growing criminal and juvenile justice populations through reducing reliance on traditional case processing and working to stem the ‘revolving door’ syndrome.” National Association of Pretrial Services Agencies (NAPSA), Pretrial Diversion Abstract (January 1998).[8] For those charged with public offenses, such programs provide “an opportunity to make significant changes in their lives and prevent further penetration into the criminal justice system.”[9] Id.
[¶ 23.] According to the NAPSA, pretrial diversion or deferred prosecution is *61 defined as “any voluntary option that provides alternative criminal case processing for a defendant charged with a crime and ideally results in a dismissal of the charge(s).”[10] In the model established by NAPSA, these diversion programs feature: “(1) uniform eligibility criteria; (2) structured delivery of services and supervision; and (3) dismissal — or its equivalent — of pending criminal charges upon successful completion of the required term and conditions of diversion.”[11] Unsuccessful participants are returned for prosecution.
[¶ 24.] Our Legislature might well consider enacting authorization for a formal pretrial diversion program.[12] Such legislation could address many questions that will remain open after today. Should criminal charges on any crime be permitted a diversion, or, as in many jurisdictions, should there be legislative limits on the types of crimes subject to diversion? Is anyone eligible for diversion, or should it be limited to first offenders, nonviolent offenders, youthful offenders, or chemically-addicted offenders? Should there be guidelines to ensure statewide uniformity in decisions allowing deferred prosecutions?[13] How can the process be administered in a nondiscriminatory manner? See South Dakota Equal Justice Commission Final Report, Findings on Pretrial Processes, 7.1.4; Recommendation 7.2.3.[14] Can prosecutors demand waiver of certain rights as a condition to obtaining a deferred prosecution? [15] *62 How long can a term of a deferred prosecution last? Do allegations of breach require a due process hearing? All these issues await resolution through enabling legislation. Without legislation, these questions may well be resolved only haphazardly through court rulings like the one today.

. "[M]any jurisdictions have now adopted programs variously called pretrial diversion, pretrial intervention, or deferred prosecution for the purposes of conserving scarce prose-cutorial and judicial resources and of dealing more effectively with certain offenders.” Wayne LaFave, et al., 4 Crim. Proc. § 13.6(a) (3d ed. updated 2012).

. This is not to suggest that courts should have no role. "While it is the prosecutor's prerogative to initiate pretrial diversion consideration for potential participants, courts should have a role in monitoring the fair application of diversion eligibility guidelines.” NAPSA Performance Standards and Goals for Pretrial Release and Diversion 1995, Standard 2.6, available at http://projectremand. org/pdl/diversionl 995.pdf (last visited on May 17, 2013).

. See http://www.napsa.org/publications/ diversionabstract.pdf (last visited on May 17, 2013).

. The NAPSA recognizes 298 pretrial diversion programs in 45 states, the District of Columbia, and the U.S. Virgin Islands.

. See Promising Practices in Pretrial Diversion, 5. http://www.pretrial.org/Docs/ Documents/PromisingPracticeFinal.pdf (last visited on May 17, 2013); see also supra note 7, NAPSA Performance Standards and Goals for Pretrial Release and Diversion.

. See supra note 10, Promising Practices in Pretrial Diversion at 5. Pretrial diversion programs may include the following elements: (1) offers persons charged with criminal offenses alternatives to traditional criminal court proceedings; (2) permits participation by the accused on a voluntary basis; (3) occurs no sooner than the filing of formal charges and no later than a final adjudication of guilt; and (4) results in dismissal of charges, or its equivalent, if the participant successfully completes the diversion process. See Performance Standards and Goals for Pretrial Diversion/Intervention November 2008, available at http://www.napsa.org/ publications/diversion_intervention_ standards_2008.pdf (last visited on May 17, 2013).

. Polikov v. Neth, 270 Neb. 29, 699 N.W.2d 802, 804 (2005) ("the power to design a formal pretrial diversion program is a legislative function”).

. See, e.g., ABA Standards on Prosecution Function, Standard 3-3.8 (Discretion as to Noncriminal Disposition: “(a) The prosecutor should consider in appropriate cases the availability of noncriminal disposition, formal or informal, in deciding whether to press criminal charges which would otherwise be supported by probable cause; especially in the case of a first offender, the nature of the offense may warrant noncriminal disposition, (b) Prosecutors should be familiar with the resources of social agencies that can assist in the evaluation of cases for diversion from the criminal process.”). Standards available at: http://www.americanbar.org/publications/ criminaL.justice_section_archive/crimjust_ standards_pfunc_blk.html.

. Report available at: http://sdjudicial.com/ uploads/downloads/SDEJCFinalReport2006 jan.pdf. See also supra note 7, NAPSA Performance Standards and Goals for Pretrial Release and Diversion, Standard 3.2 ("No potential participant should be denied access to the pretrial diversion/intervention option based upon race, ethnic background, religion, gender, disability, marital status, sexual orientation or economic status. No person who is protected by applicable federal or state laws against discrimination 'should be otherwise subjected to discrimination for eligibility purposes.”).

. See Abad v. Cozza, 128 Wash.2d 575, 911 P.2d 376, 377 (1996) (permissible under deferred prosecution statute to require "persons seeking a deferred prosecution to waive, upon any subsequent revocation of the deferred prosecution, the rights to a jury, to call and question witnesses, and to testify in the pos-trevocation trial”).